UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY P. LITTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-01080-MJD-LJM |
| CAROLYN W. COLVIN, acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Timothy Little requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). See 42 U.S.C. §§ 416(i), 423(d). For the reasons set forth below, the decision of the Commissioner is **REVERSED AND REMANDED**.[1]

### I.   Procedural History

Little filed an application for DIB on June 6, 2005, alleging an onset of disability of April 11, 2005. Little's application was denied initially on November 2, 2005 and on reconsideration on February 20, 2006. Little requested a hearing, which was held on June 19, 2008. A decision was issued on July 18, 2008 affirming the denial of benefits. Little requested review by the Appeals Council. The Appeals Council was unable to review the record due to the file being lost.

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

1

It vacated the hearing decision and ordered a new hearing and reconstruction of the file. The new hearing was held on July 22, 2011 before Administrative Law Judge James Norris ("ALJ"). The ALJ denied Little's applications on September 21, 2011. The Appeals Council denied Little's subsequent request for review on June 25, 2012, making the ALJ's decision the final decision for purposes of judicial review. Little filed his Complaint with this Court on August 6, 2012.

## II.    Factual Background and Medical History

Timothy Little was 43 years old at the time of the alleged onset date and had past relevant work experience as a machine operator, quality inspector, and a supervisor. Little began experiencing pain in his back and shoulder in February 2004. A cervical MRI showed marked cervical spine lordosis and a thoracic spine MRI showed a left paracentral herniated disc at the T7-T8 and T8-T9 levels. Little received facet or trigger point injections, but he continued to complain about severe neck pain, upper back pain, and left arm pain.

In June 2005, Dr. Janine Sheppard, a specialist in physical medicine and rehabilitation, recommended that if his pain did not improve, Little should apply for short and long term disability as well as social security disability. She opined that it would be difficult for him to do even sedentary work as Little would not be able to tolerate reading, writing and computer activities for a 40-hour work week. She also stated that Little would need to alternate between sitting, standing, and supine activities. She based Little's ability to return to work on whether he had success with Botox injections. The following month, Little reported that while the Botox helped with the range of motion in his neck, it did nothing for his pain.

Little received a consultative examination in October 2005 with Dr. Poplin of the Disability Determination Bureau ("DDB" or "state agency physicians"). Dr. Poplin diagnosed

Little with chronic neck and upper back pain with cervical lordotic deformity. Dr. Poplin also reported that Little had a limited range of motion in his cervical spine.

Since 2005, Little regularly sought treatment from Dr. Michael Whitworth and Dr. Laura Johnson regarding his back and neck pain. In May 2008, Dr. Whitworth completed a Statement of Continued Disability for Little's long term disability insurance company. Dr. Whitworth diagnosed Little with severe cervical spondylosis and thoracic disc displacement. Regarding Little's functional capacity to perform work, Dr. Whitworth indicated that Little could only sit, stand, or walk for less than one hour per day each. He also indicated that Little could only lift up to 10 pounds occasionally and could never lift anything more than that. Dr. Whitworth also indicated that Little could never reach above the shoulders and could only occasionally lift at or below waist level. It was Dr. Whitworth's opinion that Little's limitations were expected to be indefinite.

In June 2009, Little received a consultative examination from state agency physician Dr. Brandi Rudolph. Dr. Rudolph diagnosed Little with kyphosis and neck and back pain. She also indicated that Little had a limited range of motion in his cervical spine and shoulders. Following the consultative examination, non-examining state agency physician Dr. Brill completed a Physical Residual Functional Capacity ("RFC") Assessment. Dr. Brill determined that Little could occasionally lift/carry up to 20 pounds and could only frequently lift/carry up to 10 pounds; Little could stand, walk, and sit about 6 hours in an 8-hour workday each; he could never climb ladders/ropes/scaffolds; and could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl. Dr. Brill also determined that Little was limited in reaching, specifically he could only perform occasional bilateral overhead reaching.

Dr. Johnson also completed a Physical RFC Assessment in December 2009. Dr. Johnson reported that Little could only sit for 1 hour at a time, up to 3 hours in a workday; stand for only a quarter of an hour up to 1 hour in a workday; and walk for up to half an hour for a total of 2 hours in a workday. Dr. Johnson also reported that Little could not lift/carry any amount of weight and could never reach over head, extend arms out, or flex neck. She did indicate that Little could squat, kneel, and crawl occasionally. Dr. Johnson diagnosed Little with severe cervical lordosis and thoracic kyphosis with chronic myofacial pain and disc herniations at T7-T8, T8-T9, and T9-T10.

In January 2011, Little received another consultative examination by state agency physician Dr. Singh. Dr. Singh diagnosed Little with chronic neck pain and low back pain and indicated significant limitations in Little's cervical range of motion. Dr. Singh also completed a Medical Source Statement and Physical RFC Assessment. Dr. Singh opined that Little could continuously lift/carry up to 10 pounds, frequently lift/carry up to 20 pounds, and only occasionally lift/carry up to 50 pounds. He suggested that repetitive lifting/carrying would exacerbate his neck pain symptoms. Dr. Singh also indicated that Little could sit for 8 hours at one time in a work day, but could only stand and walk for 2 hours at one time for a total of 6 hours in a workday each. Regarding Little's ability to reach overhead, Dr. Singh reported that Little could only occasionally reach overhead, up to a third of the workday. Regarding Little's postural activities, Dr. Singh reported that Little could only occasionally stoop, kneel, crouch, and crawl and that Little could frequently climb stairs/ramps and ladders/scaffolds.

At the hearing Dr. Karl Manders testified as a medical expert. After reviewing Little's file, Dr. Manders agreed with the ALJ that Little could perform medium work. Dr. Manders also diagnosed Little with chronic pain syndrome. Although opining that Little's impairments did not

equal a listing, Dr. Manders indicated that Little's chronic pain could cause limitations in his ability to work and may itself be disabling.

### III. Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.   The ALJ's Decision

The ALJ first determined that Little met the insured status requirements of the Act through June 30, 2011. Applying the five-step analysis, the ALJ found at step one that Little had not engaged in substantial gainful activity since the alleged onset date of April 11, 2005. At step two, the ALJ found that Little had the following severe impairments: cervical spondylosis and thoracic disc displacement. The ALJ also found that Little had the following medically determinable impairments that were not severe: sleep apnea, visual impairment, mild lumbar impairment, and depression.

At step three, the ALJ determined that Little did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found that Little had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c).

At step four, the ALJ determined that, since Little's past relevant work would be classified as either light or medium work, Little was capable of performing all of his past relevant work. Therefore, the ALJ determined that Little was not disabled at step four.

### V.     Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Little was not disabled. *Dixon*, 270 F.3d at 1176. The Court finds that there is not substantial evidence to support the ALJ's conclusion that Little can perform the full range of medium work without limitations.

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c). There were many RFC assessments in the record, all of which indicated limitations in some form or another, particularly in the areas of lifting/carrying, walking/standing/sitting, reaching, climbing, and various other postural limitations. [R. at 33, 340, 434-36, 463, 591-91.][2] With regard to lifting/carrying, Dr. Singh's assessment was the only assessment that determined Little could occasionally lift/carry up to 50 pounds and frequently lift/carry up to 20 pounds. [R. at 596.] The

---

[2] The Physical RFC Assessment conducted by the State Agency in 2005 are missing pages from the reconstructed file, specifically with regard to lifting/carrying, the postural limitations and reaching. However, the ALJ discussed the content of these pages in the decision, with the exception of reaching.

remaining assessments indicated that Little could lift/carry at most up to 20 pounds occasionally and 10 pounds frequently. [R. 434, 463 (lift/carry up to 10 pounds occasionally), 591 (cannot lift or carry any amount of weight).] Thus, Dr. Singh's assessment as to Little's ability lift/carry is inconsistent with the majority of the medical evidence and substantial evidence does not support a finding that Little can perform medium work.

Even if Dr. Singh's assessment is entitled to the great weight the ALJ assigned, the ALJ does not explain his reasoning for not assessing the further limitations designated by Dr. Singh. For example, Dr. Singh limited Little to walking and standing 2 hours at one time for a total of 6 hours in a work day. [R. 596.] The ALJ even accepted Dr. Singh's limitations on standing and walking, yet no limitation was made for this in the RFC. [R. 32.] Other doctors have further limited Little in the area of walking/standing. [R. 33 (2005 assessment indicated that Little could perform the standing/walking required for light work), 434 ("about 6 hours" total in a workday), 463 (less than one hour total in a workday), 590 (can stand for a total of 1 hour and walk for a total of 2 hours in a workday).] No doctor opined that Little could walk or stand a total of 8 hours in a workday and this limitation should have been incorporated in the RFC and posed in the hypothetical to the vocational expert.

Dr. Singh also limited Little to occasional overhead reaching. [R. at 598.] The ALJ, without explanation, determined that there was "little support" for this limitation. [R. at 32.] However, Dr. Singh's RFC Assessment represented the maximum of Little's capabilities assigned by any doctor. While the record is silent as to the 2005 RFC limitation in reaching, the remaining assessments concurred with Dr. Singh's limitation, ranging from no reaching to occasional reaching. [R. 436 (occasional overhead reaching), 463 (no overhead reaching), 591

(no overhead reaching).] Since all doctors opined that Little was limited in overhead reaching, such limitation should have been accounted for in the RFC.

Dr. Singh also limited Little to occasional postural activities, particularly stooping kneeling, crouching, and crawling. [R. 599.] The ALJ again found little to no support for Dr. Singh's limitations in the postural activities without explanation. [R. 32.] Although Dr. Singh indicated that Little could frequently climb and balance, the other RFC Assessments also limited Little's postural activities. [R. 340 (Little could occasionally climb ramps and stairs, but never ladders/ropes/scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl), 435 (same assessment as R. 340), 591 (occasional squat, kneel, crawl, and never climb).] Since all doctors opined that Little was limited in his postural activities, the ALJ should have accounted for them in the RFC.

The ALJ failed to cite to any medical report or opinion to contradict the limitations set forth by all of the doctors. On remand, the ALJ is instructed to assess limitations as set forth in the various RFC Assessments and incorporate these limitations in the RFC. The ALJ is also instructed to summon a vocational expert to determine whether there are jobs that exist in the national economy that Little can perform given these limitations.

Plaintiff also argues that the ALJ did not properly analyze Little's complaints of pain. The Court agrees. The restrictions set forth by the various doctors in the record indicated that the restrictions were in place so as to not exacerbate Little's pain. [*See* R. at 596, 599.] The ALJ relied very heavily on the opinions of Dr. Singh and Dr. Manders who both diagnosed Little with chronic pain. [R. at 595 (Dr. Singh diagnosed Little with chronic neck pain), 675 (Dr. Manders diagnosed Little with chronic pain syndrome).] Although recognizing that Little has chronic pain [R. at 29], the ALJ failed to mention Dr. Singh's or Dr. Manders' diagnoses. Dr. Manders even

9

went so far as to indicate that Little's chronic pain disorder could be disabling. [R. at 683, 684, 685.] While the ALJ dismissed Dr. Manders' opinion on this point as speculation, he also rejected other doctors' similar opinions based on speculation, including Dr. Singh's, showing that the ALJ only gave weight to evidence that favored his ultimate conclusion. [R. at 31, 32, 33.] On remand, the ALJ is to determine what limitations Little may have associated with his chronic pain.

Because the ALJ failed to build a logical bridge from the evidence to his conclusion, substantial evidence does not support the ALJ's finding that Little was not disabled.

The Court takes notice that three thousand days have passed since Little filed his application for disability on June 6, 2005. In order to ensure a speedy resolution of this matter, the Court instructs the Commissioner to undertake all reasonable efforts to expedite a resolution of this matter and orders the parties to provide the Court with status reports regarding the progress of this matter every 90 days until a final resolution of Mr. Little's claims has been made.

### VI.    Conclusion

For the reasons set forth above, substantial evidence does not support the ALJ's determination that Little is not disabled and the Commissioner's decision is **REVERSED** and **REMANDED**. On remand, the Commissioner is directed to assign this matter to a new administrative law judge not previously associated with this matter. The Commissioner is required to determine an RFC consistent with the limitations set forth by Little's treating physicians and the state agency physicians, particularly in the areas of walking/sitting/standing, reaching overhead, climbing ladders/ramps/scaffolds, lifting/carrying, and any other additional limitations associated with Little's chronic pain. The Commissioner is required to summon a

vocational expert to determine what jobs, if any, exist in the national economy that Little can perform that is consistent with the new RFC. The parties shall also file status reports every 90 days from the date of this order until further order of the Court.

Date: 08/23/2013

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

11